Edward J. KERN *v.* SELLS ENTERPRISES, INC.,
A Georgia Corporation

80-198                                     612 S.W. 2d 94

Supreme Court of Arkansas
Opinion delivered February 16, 1981
[Rehearing denied March 23, 1981.]

*Martin, Vater & Karr,* by: *Charles Karr,* for appellant.

*Jones, Gilbreath & Jones,* by: *Mark A. Moll,* for appellee.

RICHARD B. ADKISSON, Chief Justice. Appellant, Edward Kern, filed suit in the chancery court of Sebastian County alleging that he was induced to enter into a distributorship agreement by the untrue statements and misrepresentations of the appellee. Appellant sought common law equitable rescission, statutory rescission under the Arkansas Securities Act, Ark. Stat. Ann. §§ 67-1235 to -1262 (Repl. 1980), or damages under the Arkansas Franchise Practices Act, Ark. Stat. Ann. §§ 70-807 to -818 (Repl. 1979).

This appeal is from the chancellor's order finding that there was no untrue statements or misrepresentations and that appellant was entitled to no relief. These findings of fact by the trial court shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Rule 52, Ark. Rules Civ. Proc., Vol. 3A, Ark. Stat. Ann. (Repl. 1979).

There is a common factual thread of proof necessary to support each of appellant's three stated grounds for relief — whether appellee's representative, Higgins, told appellant that he would have an exclusive territory all to himself in the Fort Smith area if he chose to become a distributor.

The documentary evidence before the chancellor consisted of two major instruments.

The first is a list of questions labeled "Questionnaire to be Completed by Distributor" [hereinafter referred to as "Questionnaire"] which was signed by appellant and appellee's representative and which purported to serve two purposes: to enable appellee, Sells Enterprises, Inc., to properly consider appellant's application to be one of its dis-

tributors; and to verify whether appellant was certain that appellee's representative, Higgins, had covered all "important aspects of the Sells Enterprises, Inc. Distributor Program."

The second is a contract labeled "Initial Purchase Order and Independent Distributor Agreement" [hereinafter referred to as "Agreement"] which was signed by both appellant and appellee's agent and which purports to be the entire agreement between the appellee and the appellant making the latter a distributor responsible for developing sales for appellee's products in a "general geographic area" including Fort Smith and vicinity.

The significant testimonial evidence heard by the chancellor consisted of testimony by the appellant, his wife, Sharon, and appellee's representative, Bill Higgins.

The testimony presented by Higgins clearly conflicted with that of appellant and his wife concerning conversations these parties had prior to entering the "Agreement." Higgins testified to several important facts:

1. He took about 45 minutes or an hour to explain the entire program to the Kerns and gave them a copy of both the "Agreement" and "Questionnaire" to take home.

2. He informed the Kerns that the Federal Trade Commission would not allow appellee, Sells, to assign an exclusive territory.

3. He explained paragraph 16 of the "Questionnaire" to the Kerns, stating that there may be other distributors selected or currently established in the Fort Smith area, and they indicated they understood this on their answer to the "Questionnaire."

4. The representative testified repeatedly that he had never promised the Kerns an exclusive sales territory and that he had made no misrepresentation or

fraudulent statements with regard to the appellee's marketing program.

Appellant's testimony was conflicting:

>Mr. Higgins told me "[I]t would be my territory to work as I saw fit"; "I would be the only one, that they would consider putting another distributor like it in Springdale-Fayetteville area"; but "[T]here was no one else" in the Fort Smith area."

Neither of the written documents referred to can be construed to support Kern's testimony that Higgins promised him an exclusive territory. Paragraph seven of the "Questionnaire" serves to inform appellant that to grant an exclusive territory would be illegal under the Sherman Anti-Trust Act. Although the statement about the Sherman Anti-Trust Act may or may not be correct, it serves to support Higgins' testimony that an exclusive territory was not promised. The "Questionnaire" further stated in paragraph 16 that there "[M]ay be other distributors selected or currently established in the area." Paragraph two of the "Agreement" provides that appellant shall devote his efforts to developing sales for the products not only in Fort Smith and Sebastian County but also in all surrounding counties in the general geographic area; it further provided that appellant's efforts would not be limited to these areas. These documents clearly indicate that there were to be no territorial limits on appellant's distributorship. We cannot say, therefore, in light of the testimony and documentary evidence before the chancellor that her findings of fact were erroneous.

Affirmed.